UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| STEVEN LANGLEY | CIVIL ACTION |
| VERSUS | NO. 15-4396 |
| JAMES LEBLANC, ET AL. | SECTION: "I"(3) |

## REPORT AND RECOMMENDATION

Plaintiff, Steven Langley, a state prisoner, filed this federal civil rights action pursuant to 42 U.S.C. § 1983. He sued James LeBlanc, Seth Smith, Sandy McCain, Keith Bickham, Beverly Kelly, and Dr. Casey McVea.

In his original complaint, which was submitted in September of 2015, plaintiff claimed that he was denied adequate medical care at the B.B. "Sixty" Rayburn Correctional Center ("R.C.C.") and that he received inadequate responses to his administrative grievances.[1] The undersigned immediately ordered prison officials to provide both this Court and plaintiff with certified copies of his medical records and his grievance records for review.[2] Those records were produced and filed into this federal record.[3]

In October of 2015, plaintiff filed an amended complaint in which he claimed that his "well being" was threatened, again claimed that he was not receiving adequate medical care, and requested that he be transferred to another facility.[4]

---

[1] Rec. Doc. 1.
[2] Rec. Doc. 4.
[3] Rec. Docs. 5 and 6.
[4] Rec. Doc. 7.

Also in October of 2015, plaintiff filed a motion requesting that the Court hold a <u>Spears</u> hearing[5] and a motion for leave to file another amended complaint.[6] The undersigned granted the request for a <u>Spears</u> hearing,[7] and that hearing was held on December 15, 2015.[8] At the hearing, the Court asked to plaintiff to clarify and explain the bases for his motion for leave to file the amended complaint.  In response, plaintiff testified that he feared for his "safety and well being" at R.C.C., noting that his request to be placed in protective custody had been denied.  He testified that officials told him that they were unable to substantiate his allegations, but he explained to them that he nevertheless still "feel[s] threatened."  He argued that as long as he feels threatened, he cannot be denied protective custody; however, officials insist on housing him in two-man cells.  He stated that he feels "neglected" and that officials have failed to respond to his grievances in a timely manner.  He requested that the Court order a "federal investigation" of R.C.C. and force officials to transfer him to a different facility.  After the hearing, the Court granted the pending motion to amend,[9] and the second amended complaint was filed into the record.[10]

A few days after the <u>Spears</u> hearing, plaintiff filed a motion for summary judgment,[11] despite the fact that the defendants have not yet been served.  When pauper status was granted in

---

[5] Rec. Doc. 8.
[6] Rec. Doc. 10.
[7] Rec. Doc. 11. <u>See</u> <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985).  "[T]he <u>Spears</u> procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." <u>Davis v. Scott</u>, 157 F.3d 1003, 1005-06 (5th Cir. 1998).  The United States Fifth Circuit Court of Appeals has observed that a <u>Spears</u> hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. <u>Eason v. Holt</u>, 73 F.3d 600, 602 (5th Cir. 1996).  <u>Spears</u> hearing testimony becomes a part of the total filing by the *pro se* applicant. <u>Id</u>.
[8] Rec. Doc. 13.
[9] Rec. Doc. 13.
[10] Rec. Doc. 14.
[11] Rec. Doc. 17.

this case, the undersigned ordered the Clerk to withhold issuance of summons[12] so that the case could first be screened as mandated by federal law.

Specifically, federal law mandates that courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires: "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint … is frivolous …." 28 U.S.C. § 1915A(b)(1). Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action … is frivolous …." 28 U.S.C. § 1915(e)(2)(B)(i).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

---

[12] Rec. Doc. 3.

Although broadly construing plaintiff's complaint,[13] the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous.

### Improper Forms of Relief

Before turning to the substance of plaintiff's claims, the Court initially notes that at least two of the forms of relief plaintiff has requested are improper.

First, as noted, plaintiff requested at the Spears hearing that the Court order a "federal investigation" of R.C.C. However, this Court has no authority to issue such an order, and plaintiff has no constitutional right to such an order. See Kates v. Micieli, Civ. Action No. 2:09-1447, 2010 WL 55916 (W.D. La. Jan. 4, 2010); Hymel v. Champagne, Civ. Action No. 07-450, 2007 WL 1030207, at *2 (E.D. La. Mar. 28, 2007); May v. Kennard Independent School District, No. 9:96-CV-256, 1996 WL 768039, at *4 (E.D. Tex. Nov. 22, 1996).

Second, plaintiff also requested that the Court order officials to transfer him to a different facility. However, placement of state prisoners is a matter left to the discretion of state officials. A prisoner has no right springing from the Constitution itself or from any protected liberty or property interest arising from state law to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995); Maddox v. Thomas, 671 F.2d 949, 950 (5th Cir. 1982); Oatis v. St. Tammany Parish Sheriff's Office, Civ. Action No. 09-6266, 2009 WL 3566120, at *3 (E.D. La. Oct. 29, 2009); George v. Travis, Civ. Action No. 07-

---

[13] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

986, 2007 WL 1428744, at *8 n.12 (E.D. La. May 10, 2007).[14] Accordingly, this Court has no authority to order the transfer plaintiff requests. Jones v. LeBlanc, Civ. Action No. 10-0346, 2013 WL 3148634, at *9 (W.D. La. June 19, 2013); Hymel, 2007 WL 1030207, at *2.

However, to the extent that plaintiff has requested monetary damages or another form of relief which could be awarded in proper cases, the Court notes that this is not such a case because plaintiff's underlying claims are clearly frivolous for the following reasons.

### Medical Claim

### a. Rash

In his original complaint, plaintiff claimed that he was denied adequate medical care for skin problems after filing "sick call" requests on June 22, July 1, and July 28, 2015. He alleged that on all three occasions he was examined by a nurse rather than by the prison physician, Dr. Casey McVea.

As noted, in response to those allegations, the Court ordered production of plaintiff's records.[15] In pertinent part, those medical records show:

06/22/2015   Plaintiff was seen in the prison medical department in response to a "sick call" request complaining of, *inter alia*, a rash and asking that he be provided with Dove soap. He was referred to Dr. Casey McVea, the prison doctor, who prescribed Lamisil, an antifungal medication, on June 24, 2015.[16]

06/29/2015   Plaintiff sent a letter to the prison medical department asking for a response to his "sick call" request of June 22.[17]

---

[14] Moreover, the Court notes that Louisiana law expressly provides: "[A]ny individual subject to confinement in a state adult penal or correctional institutional shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department." La. Rev. Stat. Ann. § 15:824(A).
[15] Rec. Doc. 4.
[16] Rec. Doc. 6-2, p. 38.
[17] Rec. Doc. 6, p. 17.

07/01/2015   The prison medical department responded to plaintiff's letter, stating:

> This is in response to your letter of 6/22/15. Dr. McVea reviewed your sick call and only ordered Lamasil cream for 3 months. He did not choose to order soap or powder. You will have to ask for the cream from the pill cart.[18]

07/01/2015   Plaintiff was again seen in the prison medical department in response to a "sick call" request complaining of itchy skin caused by the "state soap" and asking that he be allowed Dove soap, baby powder, and Selsun Blue shampoo. He was referred to Dr. McVea; however, on July 6, 2015, Dr. McVea denied the request as "not medically necessary."[19]

07/28/2015   Plaintiff was seen in the prison medical department in response to a "sick call" request complaining of, *inter alia*, a rash on the back of his head and again asking for a new shampoo. He was referred to Dr. McVea.[20]

08/15/2015   Plaintiff sent a letter to Dr. McVea. Plaintiff stated that, while he was incarcerated at the Dixon Correctional Institute, it was ordered that he be provided with Dove soap, baby powder, and shampoo. He complained that he was not receiving those items at the Rayburn Correctional Center.[21]

08/18/2015   The prison medical department responded to plaintiff's letter, stating:

> In response to your letter; Dr. McVea determines and prescribes who gets Dove soap, baby powder and shampoo, and not one of these items are medically necessary, just because you were ordered these items at Dixon, does not automatically determines [sic] that they will be continued at other Correctional Center. You have an upcoming appointment with Dr. McVea on 8/20/15 if nothing happens.[22]

09/13/2015   Plaintiff was seen in the prison medical department in response to a "sick call" request complaining of dry and itchy skin which he

---

[18] Rec. Doc. 6, p. 16.
[19] Rec. Doc. 6-2, p. 37.
[20] Rec. Doc. 6-2, p. 36.
[21] Rec. Doc. 6, p. 15.
[22] Rec. Doc. 6, p. 14.

6

    attributed to his use of the "state soap." He again requested Dove soap and dandruff shampoo. His chart was sent to Dr. McVea.[23]

09/16/2015 Dr. McVea reviewed plaintiff's complaints of a rash, diagnosed him as having folliculitis and seborrhea, and prescribed Selsun Blue shampoo and Dial soap.[24]

09/27/2015 Plaintiff signed an acknowledgement documenting his receipt of Dial soap.[25]

Plaintiff's grievance records show that he also submitted an administrative grievance concerning this matter on August 3, 2015.[26] On August 7, 2015, Keith Bickham issued a response stating:

> Your complaint has been reviewed and investigated. A review of your medical record has also been conducted.
> You attended sick call on June 22, 2015, with complaints of a rash. Dr. Casey McVea, Health Care Authority, reviewed this medical encounter and he ordered Lamisil Cream for you to apply twice a day for three months. On July 1, 2015, you attended sick call requesting dove soap, baby powder, and shampoo. Dr. McVea reviewed the request and your medical record and determined that the items are not medically necessary.
> Following you making sick call on July 28, 2015, you have been scheduled for an appointment with Dr. McVea in the coming weeks. You can discuss your medical concerns with him at this time. Dr. McVea is the Health Care Authority in the delivery of your care while you are at this facility and he will make the decision what is medically necessary.
> No relief is warranted for this complaint. Your request for remedy is denied.[27]

With respect to plaintiff's claim that he was denied adequate medical care for his rash, that claim is frivolous. Obviously, prisoners have a right to medical care in jail. However, that right is a limited one, and a prisoner's constitutional right to medical care is violated only if his "serious

---

[23] Rec. Doc. 6-2, p. 33.
[24] Rec. Doc. 6-2, p. 32.
[25] Rec. Doc. 6-2, p. 30.
[26] Rec. Doc. 6-3, pp. 10-12.
[27] Rec. Doc. 6-3, p. 3.

7

medical needs" are met with "deliberate indifference" on the part of penal authorities.  See Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).  A rash is not normally considered a "serious medical need" for the purposes of constitutional law.  See, e.g., Sandifer v. Tanner, Civ. Action No. 14-2992, 2015 WL 2157352, at *5 (E.D. La. May 7, 2015); Guy v. Carter, Civ. Action No. 13-5730, 2014 WL 644321, at *9 (E.D. La. Feb. 14, 2014); Wilson v. Rascoe, No. 2:10CV91, 2012 WL 4465566, at *7 (N.D. Miss. Sept. 25, 2012); Gonzalez-Reyna v. Ellis, No. 1:09cv522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009).

Nevertheless, *even if* plaintiff's rash could be considered a "serious medical need," his claim would still fail because he cannot show that prison officials acted with "deliberate indifference."  As the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  McCormick v. Stalder,

105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995). That is the case here. As shown above, plaintiff's complaints concerning his rash were not ignored. Each time he submitted a sick call, he was examined in the medical department and his condition was evaluated. Dr. McVea, in his professional judgment, determined that Lamisil was the appropriate treatment and that the over-the-counter products plaintiff desired (Dove soap, baby powder, and Selsun Blue shampoo) were not medically necessary.

Although plaintiff disagreed with Dr. McVea's judgment, that disagreement is of no moment. Absent exceptional circumstances, an inmate's disagreement with his medical treatment simply does not constitute deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006); see also Brauner v. Coody, 793 F.3d 493 (5th Cir. 2015) (a prison doctor's "refusal to accommodate [a prisoner's] requests in the manner he desired" is not deliberate indifference).

It is also of no consequence that plaintiff had been prescribed the desired over-the-counter products by other physicians while he was incarcerated at the Dixon Correctional Institute. At most, that shows only a difference in medical opinions, and such a difference of opinion is not indicative of deliberate indifference. See, e.g., Clifford v. Doe, 303 Fed. App'x 174, 176 (5th Cir. 2008); Davis v. University of Texas Medical Branch, 209 Fed. App'x 446, 447 (5th Cir. 2006); Stewart v. Murphy, 174 F.3d 530, 535 (5th Cir. 1999).

Further, as already noted, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97,

107 (1976). Generally, such matters of professional medical judgment are better left to the expertise of medical personnel rather than to the legal expertise of judges. Federal courts are therefore reluctant to second-guess such medical decisions in federal civil rights actions. Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action."). There is no basis whatsoever to engage in such second-guessing here.

The foregoing conclusion is not changed by the fact that plaintiff's rash was not cured by the Lamisil, the first medication Dr. McVea prescribed. Where, as here, an inmate in fact received medical treatment, federal constitutional protections are not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. Gobert, 463 F.3d at 346; Williams v. Chief of Medical Operations, Tarrant County Jail, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). Moreover, the Court also notes that Dr. McVea subsequently prescribed Selsun Blue, as plaintiff requested, and Dial soap once the Lamisil failed to resolve the rash.

Nor is foregoing conclusion changed by the fact that plaintiff's medical care "may not have been the best money could buy." Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978). In fact, the federal constitution

does not require even that an inmate's medical care be free from negligence or medical malpractice.  Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).  Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

In summary, the determinative issue before the Court is not whether plaintiff's medical treatment was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his rash was a serious medical need that was met with deliberate indifference.  It was not.  Accordingly, his claim that he was denied adequate medical care for the rash is legally frivolous and should therefore be dismissed.

### b.  Chest Pains

In his first amended complaint,[28] plaintiff added a claim he was also denied adequate medical care for chest pains.  In that amended complaint, plaintiff stated that he put in a "Routine Sick Call" request on September 27, 2015, in which he stated that he had been experiencing chest pains for four days.  He alleged that a "Health Care Personal Screening" was done that same day at 9:37 a.m.[29]  The record reflects that Dr. McVea issued plaintiff a written response the following day, stating:

---

[28] Rec. Doc. 7.
[29] Rec. Doc. 7, p. 3.

11

>Your condition requires further attention, you will be placed on routine call-out (usually takes 4-6 weeks to be seen).
>….
>You have already been placed on the callout waiting list. Please be patient.
>You have made sick calls that have little or no medical merit, if you repeat this again you will receive a write-up for a rule 15A violation (Malingering involving sick call).
>….
>You will be placed on blood pressure checks to further evaluate/treat your condition.[30]

Even ignoring the fact that plaintiff's claim concerning his chest pains is clearly unexhausted,[31] the undersigned nevertheless finds that this claim is likewise frivolous in any event. It is evident that this claim, like plaintiff's previous claim, is premised on his erroneous belief that he was entitled to see a *physician* (rather than a nurse or other medical professional) on demand. He clearly had no such right. Boyett v. County of Washington, 282 Fed. App'x 667, 673-74 (10th Cir. 2008); McNeil v. Redman, 21 F. Supp. 2d 884, 887 (C.D. Ill. 1998). Rather, as noted above, his only right in this regard is to not have his "serious medical needs" met with "deliberate indifference." In this case, his complaint of chest pains was not ignored. On the contrary, he received prompt medical attention for the complaint.[32] And, as evidenced by his personal response to plaintiff, Dr. McVea *himself* reviewed the matter and formulated a medical strategy to address it. Even if plaintiff believes that Dr. McVea was being negligent or committing medical malpractice by failing to take a more proactive approach, that, as explained above, simply is not a basis for a *federal* claim. Accordingly, this claim likewise fails.

---

[30] Rec. Doc. 7, p. 5.

[31] Federal law provides that prisoners must exhaust their administrative remedies before seeking relief in the federal courts. 42 U.S.C. § 1997e(a). "District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012). Here, it is obvious that plaintiff did not exhaust his administrative remedies with respect to this claim because he submitted his amended complaint less than four days after submitting his sick call request.

[32] Rec. Doc. 7, p. 3; see also Rec. Doc. 6-2, p. 31.

**Denial of Protective Custody**

Plaintiff next claims that his constitutional rights have been violated by prison officials' refusal to accede to his demands to be housed in protective custody and by instead placing him in two-man cells. To the extent that plaintiff is arguing that he has a right to be housed in protective custody (or, for that matter, in any particular custodial classification) on demand, he is clearly wrong. See, e.g., Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995); Doss v. Calfee, Civ. Action No. 5:07cv53, 2008 WL 112109, at *6 (E.D. Tex. Jan. 9, 2008); see also Mozee v. Crowley, 188 Fed. App'x 241, 242 (5th Cir. 2006). Rather, as the United States Fifth Circuit Court of Appeals has explained:

> Classification of prisoners is a matter left to the discretion of prison officials. Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983). As pointed out in Wilkerson, "[i]t is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" Wilkerson, 703 F.2d at 911, citing McGruder v. Phelps, 608 F.2d 1023, 1026 (5th Cir. 1979). Classification of inmates in Louisiana is the duty of the Louisiana Department of Corrections and an inmate has no right to a particular classification. Id. Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order. Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

McCord v. Maggio, 910 F.2d 1248, 1250-51 (5th Cir. 1990).

That said, inmates do, of course, have a constitutional right to be protected for harm. Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) ("The State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including ... protection from harm, during their confinement."). However, the United States Fifth Circuit Court of Appeals has held:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that

> prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir.1995) (citations and internal quotation marks omitted). Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question …." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); accord Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008).

Although this right exists, plaintiff has not stated a nonfrivolous failure-to-protect claim because he has offered nothing more than his own conclusory assertions that he is in danger. His complaint, as amended, fails to specify the danger he purportedly faces, and, at the Spears hearing, he simply testified vaguely that he "feel[s] threatened." Additionally, he does not contend that prison officials have ignored his concerns; on the contrary, he testified that prison officials have stated to him that they have been unable to substantiate his allegations that he is in danger.[33] Clearly, officials have not acted with deliberate indifference merely because they have refused to house plaintiff in protective custody based on nothing more than his own unsubstantiated allegations that he is in danger. See, e.g., Forsythe v. McKinney, No. 96-50119, 1996 WL 400072 (5th Cir. May 30, 1996) ("Forsythe's assertions do not establish that the defendants could have reasonably inferred from his unsubstantiated complaints that he faced a substantial risk of harm from other inmates."). While the Court would obviously hope that prison officials would err on the side of caution in such matters, it cannot be said that they have acted with "deliberate

---

[33] This testimony was corroborated by a document plaintiff subsequently submitted to the Court in which prison officials detailed their unsuccessful efforts to substantiate plaintiff's allegations that he was in danger. Rec. Doc. 16, pp. 4-6.

14

indifference" by failing to do so under the facts of this case. Accordingly, this claim should be dismissed.

### Administrative Grievances

Lastly, plaintiff claims that officials have violated his constitutional rights by failing to respond (or by responding inadequately) to his administrative grievances. That claim is legally frivolous because inmates clearly have *no* constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction. Bonneville v. Basse, 536 Fed. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007). Accordingly, this claim likewise fails.

### RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's motion for summary judgment, Rec. Doc. 17, be **DENIED**.

It is **FURTHER RECOMMENDED** that plaintiff's claims be **DISMISSED WITH PREJUDICE** as frivolous.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

    New Orleans, Louisiana, this third day of February, 2016.

                                        **DANIEL E. KNOWLES, III**
                                        **UNITED STATES MAGISTRATE JUDGE**